UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY R. KOSS,

    Plaintiff,

Case No. 1:09-cv-352

Hon. Robert J. Jonker

v.

DONALD TOMPKINS and
MICHIGAN DEPARTMENT OF
CORRECTIONS,

    Defendants.
    _____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983 and other statutes. *See* Plaintiff's "causes of action" in § I, *infra*. This matter is now before the court on defendants' motion for summary judgment (docket no. 33).

**I.    Plaintiff's verified complaint**

Plaintiff alleged that he is a Sunni Muslim suffering from Type II diabetes. Compl. at ¶ 15.[1] Because of his diabetic condition, plaintiff cannot participate in the Fast of Ramadan. *Id.* at fn. 8. Plaintiff alleged that defendant Chaplain Tompkins prevented him from participating in "Eid-ul-Fitr" in 2006, 2007 and 2008,[2] on the ground that he did not participate in the Fast of

---

[1] Plaintiff states that he has been a Muslim since 1983 and refers to himself as Nafi Abdul Muti.

[2] "On the day of the Eid-ul-Fitr, Muslims celebrate the successful completion of the holy month of Ramadan, during which observant Muslims fast from sun up to sun down. The end of Ramadan is signaled by the sighting of the new moon, and Muslim law and tradition dictate that the Eid-ul-Fitr follow thereafter within three days. Celebration of the Eid-ul-Fitr typically begins with a sweet breakfast, followed by prayer, and later the Eid-ul-Fitr feast." *Ford v. McGinnis*, 352 F.3d 582, 585 (2nd Cir. 2003). The court notes that different individuals refer to the holiday as "Eid al Fitr" in their court filings.

Ramadan. *Id.* at ¶¶ 20-24. The gist of plaintiff's complaint is that even if his diabetic condition prevents him from participating in the Fast of Ramadan, he should be placed on the callout list and be allowed to participate in Eid-ul-Fitr. *Id.* at ¶¶ 15-21.

Plaintiff has set forth nine "causes of action" against defendants Michigan Department of Corrections (MDOC) and Chaplain Tompkins, in both his official and individual capacity. First, that defendants have violated his First Amendment right to practice his religious beliefs. Second, that defendants have violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000 *et seq.* Third, that defendants violated the Equal Protection Clause of the Fourteenth Amendment, by acted in concert "pursuant to some design scheme" to deprive plaintiff of his constitutional rights. Fourth, that defendants engaged in a civil conspiracy to deny plaintiff of the protection of a law of the United States, i.e., RLUIPA and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. Fifth, that defendants violated the ADA and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794. Sixth, that plaintiff is entitled to injunctive relief under RLUIPA and the ADA. Seventh, that plaintiff is entitled to declaratory judgment. Eighth, that defendants violated plaintiff's due process rights under the Due Process Clause of the Fourteenth Amendment. Ninth, plaintiff demands a jury trial. Finally, plaintiff seeks injunctive relief and millions of dollars in damages from defendants. *See* Compl. at pp. 32-35. Defendants have moved for summary judgment as to all claims.

II. **Plaintiff's Ninth cause of action**

As an initial matter, plaintiff's jury demand, set forth as his "Ninth cause of action," does not constitute a separate claim for relief. Accordingly, this "cause of action" should be dismissed as improper.

### III. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### IV. Plaintiff's claims regarding Eid-ul-Fitr in 2006 and 2007

Defendants contend that plaintiff failed to exhaust his administrative remedies with respect to defendants' failure to allow him to attend Eid-ul-Fitr in 2006 and 2007. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must

3

complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130.[3] Three different versions of this policy directive were applicable during 2006 and 2007, bearing the following effective dates: Dec. 19, 2003; March 5, 2007; and July 9, 2007. *See* docket no. 38-3. While the lettering of the paragraphs is not identical, each of the policy directives contain the following requirements. A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶ X. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

---

[3] Plaintiff's claims from 2006 and 2007 should have been grieved during those years. The court notes that three different versions of the applicable policy directive, PD 03.02.130 were applicable during that time period, with the following effective dates: Dec. 19, 2003; March 5, 2007; and July 9, 2007. *See* docket no. 38-3. While the different versions contain minor variations, each version contains a three-step grievance process as outlined in this report.

*Id.* at ¶ R (emphasis in original).[4] The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the appropriate grievance coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must file a completed Step III grievance, using the appropriate form.

Defendants have provided the affidavit of Richard Stapleton, Administrator of the Office of Legal Affairs for the MDOC, which states that the only grievance filed to the third step of the grievance process after the year 2002 was a grievance filed in 2008. *See* Stapleton Aff. at ¶ 16; Grievance Inquiry (docket no. 38-3).[5] In his affidavit, Steven Winchester, the Grievance Coordinator at plaintiff's correctional facility, stated that there are no records of plaintiff filing grievances in 2006 or 2007 regarding his participation (or non-participation) in Eid-ul-Fitr in those years. *See* Winchester Aff. at ¶¶ 1-4 (docket no. 38-4). There is no record that plaintiff properly grieved issues related to his ability to attend Eid-ul-Fitr in either 2006 or 2007. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims that he was unable to attend Eid-ul-Fitr in 2006 and 2007. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

### V. Plaintiff's claims regarding Eid-ul-Fitr in 2008

After reviewing the record in this case, the court concludes that plaintiff has no standing to bring his statutory and constitutional claims regrading Eid-ul-Fitr in 2008. While plaintiff alleged that he was not placed on a religious callout for Eid-ul-Fitr in 2008, *see* Compl. at

---

[4] The quoted language is from the most recent version of the policy directive (i.e., effective July 9, 2007). However, the earlier versions contain similar language.

[5] The grievance filed in 2008 addressed plaintiff's inability to attend Eid-ul-Fitr on October 1, 2008. This grievance was exhausted and is discussed in § V, *infra*.

5

¶¶ 19-20 and fn. 12, plaintiff does not allege that defendants prevented him from participating in the religious holiday. In fact, it is undisputed that plaintiff attended Eid-ul-Fitr on October 1, 2008. "Although [plaintiff] was not on the callout list because he did not sign up for Ramadan, <u>he came to Eid al Fitr on a handwritten pass</u>." Tompkins Aff. at ¶ 15 (docket no. 34-3) (emphasis added).[6] Assuming that Chaplain Tompkins failed to place plaintiff on the 2008 callout for Eid-ul-Fatr, plaintiff suffered no injury because he was able to attend the religious holiday. Absent an "injury in fact," plaintiff has no standing to bring an action against Chaplain Tompkins or the MDOC. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The requirement of an "injury in fact" is one of three elements necessary to establish standing:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-561 (internal citations omitted).

Accordingly, defendants are entitled to summary judgment with respect to all of plaintiff's claims regarding Eid-ul-Fitr in 2008 and brought under RLUIPA, the ADA, the RA, and the First and Fourteenth Amendments, for lack of standing.

---

[6] The court notes that plaintiff was placed on the Eid-ul-Fitr callout scheduled for September 20, 2009. Tompkins Aff. at ¶ 3 (docket no. 25-3). Because plaintiff was scheduled for callout, his motion for a temporary restraining order was dismissed as moot. *See* Order (docket no. 32).

### VI. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 33) be **GRANTED** and that this case be dismissed.


Dated: July 20, 2010                              /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).